IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAYMOND BOOKE                    )
                                 )
              Plaintiff,         )
                                 )
v.                               )        Case No.  20-cv-02370-KHV-KGG
                                 )
ANDREW WHEELER, Administrator    )
U.S. Environmental Protection Agency,  )
                                 )
              Defendant.         )

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

Defendant Andrew Wheeler, in his official capacity as Administrator of the United States

Environmental Protection Agency ("EPA"), through counsel Stephen R. McAllister, United

States Attorney for the District of Kansas, and Andrea L. Taylor, Assistant United States

Attorney for said District, asks this court to dismiss Plaintiff's Complaint and Demand For Jury

Trial (Doc. 1) for failure to state a claim upon which relief may be granted (Fed. R. Civ. P.

12(b)(6)), or in the alternative, for summary judgment (Fed. R. Civ. P. 56).  No genuine issues of

material fact support Plaintiff's claims for Title VII retaliation or a retaliatory hostile work

environment.

**INTRODUCTION**

In 2018, Diann Sandridge, Raymond Booke's co-worker, filed a workplace bullying and

harassment complaint against Shelly McGhee, their supervisor.  EPA Region 7 officials then

conducted an internal fact-finding investigation, in which McGhee's subordinates were

interviewed.  Booke's interview was held on July 13, 2018.  A few days later, Booke alleges

McGhee started bullying and harassing him.  In September 2018, Booke filed his own workplace

bullying and harassment complaint alleging that McGhee retaliated against him for participating in the Sandridge investigation.

In this memorandum, Defendant will explain why Booke's participation in the Sandridge investigation and his own workplace bullying and harassment complaint are not protected opposition to discrimination under Title VII.  Without a protected activity, Booke cannot sustain a Title VII retaliation or retaliatory hostile work environment claim.

<u>**CONCISE STATEMENT OF FACTS**</u>

**A. PARTIES**

1.   In 2018, Raymond Booke was one of two Lead Information Technology ("IT") Specialists in the Information Technology Branch ("IT Branch") of the Office Policy and Management, Mission Support Division of the EPA in Region 7.  *See* Ex. A, Smocks Declaration ¶¶ 7, 9.

2.   Shelly McGhee is the Chief of the IT Branch for Region 7 of the EPA.  She has held that position since January 8, 2018.  *See* Ex. B, McGhee Declaration ¶ 1; Compl. ¶ 8.

3.   Before the EPA hired McGhee, Booke served as the Acting IT Branch Chief.  *See* Ex. A, Smocks Declaration ¶ 8.

4.   Along with Booke, McGhee was the direct supervisor of five employees in EPA Region 7's IT Branch:  Lead IT Specialist Ray Booke (GS-14), Lead IT Specialist Michael Propst (GS-13), IT Specialist Diann Sandridge (GS-13), IT Specialist Brad Countryman (GS-12), IT Specialist Brandon Lewis (GS-12), and IT Specialist Tri Knoke (GS-12).  Ex. B, McGhee Declaration ¶ 2.

**B. EPA ORDER 4711 – PROCEDURE FOR ADDRESSING ALLEGATIONS OF WORKPLACE HARASSMENT**

5. On November 20, 2015, the EPA created a consistent and effective procedure for responding to allegations of workplace harassment through EPA Order 4711---"Procedure for Addressing Allegations of Workplace Harassment" (hereinafter "EPA Order 4711"). *See* Ex. A, Smocks Declaration ¶ 2 - Attachment A, EPA Order 4711.

6. EPA Order 4711 fact-finding investigations take place for workplace actions that are threatening, intimidating, bullying, and/or disturbing. *Id*. at ¶ 3 – Attachment A at Section III.

7. Under EPA Order 4711, workplace bullying is a form of harassment that may be the subject of a fact-finding investigation. Workplace bullying may include the deliberate, hurtful, negative, repeated mistreatment of one or more employees. Examples of workplace bullying for purposes of EPA Order 4711 include constant and unfair criticism, teasing, yelling, insulting, malicious gossiping, and aggressive behavior. *See* Ex. A, Smocks Declaration, Attachment A at Section IV(A) and (K).

8. The EPA Order 4711 procedure "is not intended to replace or impede the Equal Employment Opportunity Commission discrimination complaint process found at Title 29 C.F.R. Part 1614…." And it "sets forth a procedure separate from those processes." *Id*. ¶ 4 – Attachment A at Section I.

Sandridge's EPA Order 4711 workplace bullying complaint

9. In 2018, Diann Sandridge initiated a workplace bullying complaint under EPA Order 4711 against McGhee. Compl. at 3 ¶ 11.

10. In her EPA Order 4711 complaint, Sandridge alleged that McGhee treated her in a bullying, aggressive, and intimidating manner. *See* Ex. D, Tapia Declaration ¶ 2.

11. McGhee and her subordinates were interviewed in Sandridge's EPA Order 4711 fact-finding investigation (hereinafter "the Sandridge investigation").  *See* Ex. D, Tapia Declaration ¶ 6; Ex. B, McGhee Declaration ¶ 2.

12. Booke's interview in the Sandridge investigation was held on July 13, 2018.  Compl. at 2 ¶ 9; *see also* Ex. D, Tapia Declaration ¶ 8.

13. On July 13, 2018, in response to EPA Region 7 officials fact-finding questions, Booke described the workplace tension between Sandridge, Propst, and McGhee as follows:

> …they really have a communication problem.  And neither side seems to be willing to bend.  And so, I think that's the basis of the whole thing is a communications issue.
>
> *See* Ex. D Tapia Declaration, Attachment A ¶ 9, Attachment A at 8 (bate stamp 00983).

14. On July 13, 2018, in response to questions, Booke also said:

> This is a leadership issue, not just at Shelly's level, but Shelly, Ben and Mike because nobody has – Shelly has very little actual leadership experience and she has come in here and has been dropped into this environment, that was already a little bitter and angry, and given no mentorship or guidance, just kind of let loose.
>
> *Id*. at ¶ 10 Attachment A at 12 (bate stamp 00987).

15. During Booke's July 13, 2018, interview, his Transcript did not reflect a concern that the conflict between McGhee and Sandridge occurred because of age or sex discrimination.  *See* Ex. D, Tapia Declaration ¶ 11.

16. Cecilia Tapia was the decision maker in the Sandridge investigation.  *See* Ex. B, Tapia Declaration ¶ 1.  After fully reviewing the fact-finding report, Tapia determined that Sandridge's workplace bullying allegations were unsupported.  *Id*. at ¶ 12.

Booke's EPA Order 4711 workplace harassment and retaliation complaint

17. Under EPA Order 4711, retaliation against any person who reports workplace harassment, or who participates in a fact-finding investigation, is prohibited and may result in disciplinary action, including dismissal.  *See* Ex. A, Smocks Declaration ¶ 6.

18. On September 19, 2018, Booke sent an email to Michael Brincks stating that McGhee had subjected him to ongoing workplace harassment and retaliation that had been escalating since July 16, 2018.  Ex. D, Tapia Declaration ¶ 13, Attachment B.

19. In response to Booke's email, EPA Region 7 officials conducted an additional EPA Order 4711 investigation.  Ex. D, Tapia Declaration ¶ 14.

20. Cecilia Tapia was the decision maker for Booke's harassment and retaliation complaint; she reviewed the full fact-finding report regarding Booke's allegations and decided they were unsubstantiated.   Ex. D, Tapia Declaration ¶ 15.

**C.  TITLE VII EEO ACTIVITY**

21. On November 2, 2018, Booke met with McGhee to discuss his annual performance appraisal.  Booke believed McGhee's comments on his performance appraisal highlight the extent McGhee was willing to go to "bully, retaliate, and harass" him for his previous 4711 activities.  Ex. C, Butkovich Declaration ¶ 4, Attachment A.

22. On November 2, 2018, Booke contacted an EEO Counselor to complain that McGhee retaliated against him for incidents that occurred on July 13, 2018 and November 2, 2018.  *See* Ex. C, Butkovich Declaration ¶ 3.

23. Booke filed a formal Complaint of Discrimination in the Federal Government (hereinafter "EEO Complaint") on March 22, 2019.  He checked the box next to retaliation and added "for participation in protected activity."  *See* Ex. C, Butkovich Declaration ¶ 5.

24. Once an EPA employee files a formal EEO complaint, an outside contractor is hired to investigate the matter.  Ex. C, Butkovich Declaration ¶ 6.

25. McGhee first learned of Booke's Title VII EEO complaint in April 2019 when the EEO investigator contacted her by email to provide her response to Booke's formal EEO complaint. *See* Ex. B, McGhee Declaration ¶ 5.

**D.  MCGHEE'S EMPLOYMENT ACTIONS**

26. McGhee was Booke's supervisor from January 2018 through March 2019.  While she supervised Booke, he never received discipline, lost pay, or suffered any tangible harm as a result of the alleged employment actions Booke details in paragraph 20 of his Complaint and Demand For Jury Trial.   *See* Ex B, McGhee Declaration ¶ 6.

27. McGhee sent Booke to training early in fiscal year 2018, but denied his second request for training after learning the IT Branch lacked funding to send any subordinate to training from July 2018 through the end of the fiscal year.  Booke's requested training cost $3,000.  The only training McGhee approved for her employees during that timeframe was training provided free of cost.  *Se*e Ex. C, McGhee Declaration ¶ 3.

28. After reviewing Booke's work performance from January 2018 through October 2018, McGhee rated Booke's performance as Fully Successful.  *See* Ex. 4, McGhee Declaration ¶ 4.

29.  Effective March 31, 2019, Booke was voluntarily reassigned to Security Specialist, GS-14, Security, Safety and Facilities Management Branch, Office of Policy and Management for

EPA's Region 7.  He maintained the same, grade, step, and salary in this new position.  Ex. A, Smocks Declaration ¶ 9.

## ISSUE PRESENTED

Can Booke state a Title VII retaliation or retaliatory hostile work environment claim for employment actions that occurred *before* he engaged in Title VII protected activity?

## ARGUMENT

This court must decide (1) whether Booke's participation in the Sandridge investigaton constitutes participation in a Title VII protected activity; (2) whether Booke's workplace bullying and harassment complaint constitutes protected opposition to discrimination under Title VII, and (3) whether incidents that occurred before April 2019 can be considered to support Booke's retaliatory hostile work environment claim.

## I.   STANDARD OF REVIEW FOR TITLE VII RETALIATION IN THE FEDERAL SECTOR.

While it is unclear that retaliation claims are actionable under the federal-sector Title VII provisions, the government has not contested such claims.[1]  According to the most recent Tenth Circuit precedent, to establish a prima facie case of Title VII retaliation, a plaintiff must prove: (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) there is a causal connection between his protected activity and the materially adverse employment action.  *See Singh v. Cordle,* 936 F.3d 1022, 1042 (2019); *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014).

> The Title VII anti-retaliation provision has two clauses, making it "an unlawful employment practice for an employer to discriminate against any of his employees ... [1] because he has opposed any practice made an

---

[1] The government notes the Supreme Court has not yet decided whether Section 2000e-16(a)'s prohibition on "discrimination based on race, color, religion, sex, or national origin" extends to retaliation for protected EEO activity. *See Green v. Brennan*, 136 S. Ct. 1769, 1774 n.1 (2016); *Gomez-Perez*, 553 U.S. 474, 488 n.4. (2008).

> unlawful employment practice by *this subchapter*, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under *this subchapter*." The one is known as the "opposition clause," the other as the "participation clause."

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 555 U.S. 271, 274 (2009)(emphasis added)(quoting 42 U.S.C. § 2000e–3(a)).

Both clauses require conduct to occur under "this subchapter," which requires allegations of discriminatory conduct.

### A. Causation under the Title VII retaliation provision.

In 2013, the Supreme Court first clarified the causation standard for private sector Title VII retaliation claims in *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* —— U.S. ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013), explaining: "[A] plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *See Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* —— U.S. ——, 133 S.Ct. at 2534 (2013).

In 2020, the Supreme Court decided *Babb v. Wilkie,* 140 S. Ct. 1168 (2020). *Babb v. Wilkie* introduced a new wrinkle into the proper causation standard to apply in federal sector retaliation cases. Admittedly, the Supreme Court did not grant certiorari to review the federal sector Title VII retaliation issue in *Babb v. Wilkie.* But it did analyze the federal sector ADEA retaliation provision---29 U.S.C. § 633(a), which is substantively identical to the federal sector Title VII provision in 2000e-16(a). Because the statutory provisions are substantively the same, the government contends the *Babb v. Wilkie* causation standard should apply to federal section Title VII retaliation cases. Under that causation standard, Booke would be required to

demonstrate that his protected activity was a but-for cause of any retaliatory treatment that played a part in the personnel action that was made.

Because Booke cannot meet the first two elements of his prima facie case, this court need not determine whether the private sector Title VII or the *Babb v. Wilkie* causation standard applies in this case.

## II.   BOOKE CANNOT STATE A TITLE VII RETALIATION CLAIM.

Even in the light most favorable to Booke, his participation in the Sandridge investigation cannot sustain his Title VII retaliation claim.

### A.  Booke's participation in the Sandridge investigation was not Title VII protected activity.

EPA Order 4711 is a procedure for EPA employees to use if they believe they are being harassed in the workplace.  SOF 5. Once an employee initiates the procedure, EPA Region 7 officials conduct a fact-finding investigation to determine if facts support the employee's claim. The procedure "is not intended to replace or impede the Equal Employment Opportunity Commission discrimination complaint process found at Title 29 C.F.R. Part 1614…." SOF 8. And "[t]his order sets forth a procedure *separate* from those processes."  *Id.*(emphasis added).

Sandridge filed an EPA Order 4711 complaint because she believed McGhee's conduct was bullying, aggressive, and intimidating.  SOF 9, 10.  To determine the facts, EPA Region 7 officials interviewed McGhee and all five employees she supervised.  SOF 11.  Booke's interview took place on July 13, 2018.  SOF 12.  His participation in the Sandridge investigation allegedly subjected him to ongoing workplace harassment and retaliation.  SOF 18.  McGhee allegedly bullied him, micromanaged his work, changed his job duties, excluded him from meetings, and denied him training.  Compl. at ¶ 20.

Booke's Title VII retaliation claim fails because the Sandridge investigation was an EPA internal investigation of a workplace bullying complaint.  SOF 9, 10.  "[T]he participation clause… 'protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC.'"  *Metzger v. City of Leawood*, 144 F. Supp. 2d 1225, 1247, 1258 (D. Kan. 2001) (quoting *EEOC v. Total Systems Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

Moreover, the retaliatory acts Booke complains of occurred four months before he initiated contact with an EEO Counselor and eight months before he filed his formal EEO complaint.  SOF 12, 22, 23.  As a matter of law, Booke's participation in EPA Region 7's internal investigation was not Title VII protected activity.

Even if the Sandridge investigation was an EPA Order 4711 investigation of a sex or age discrimination complaint, Booke still cannot state a Title VII claim under the participation clause.  In *Total Systems Services*, the plaintiff was fired after participating in an internal sexual harassment investigation.  The court held the sexual harassment investigation was not activity protected by 42 U.S.C. § 2000e-3(a)'s participation clause because that clause requires "an investigation … under this subchapter."  See *EEOC v. Total Systems Services, Inc.,* 221 F.3d at 1174.  The court further opined, a Title VII investigation does not include an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC.  *Id.*  Similarly, in *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 746-47 (7th Cir. 2010), *Hatmaker* made unfounded sexual harassment claims against her supervisor during an internal investigation and was terminated.  Again, the court held "[a] purely internal investigation does not involve a

'charge,' … or a 'hearing,'" thus it doesn't fall under Title VII.  *Id*. at 747.  *See also Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990).

Because Booke's retaliation claim does not fall under Title VII's participation clause, he has failed to allege a Title VII protected EEO activity.  Dismissal under Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56 is appropriate.

**B.  During the Sandridge investigation, Booke did not oppose discrimination.**

Booke now characterizes the Sandridge investigation as an "EEO" investigation based on her sex and age.  Compl. at 2 ¶ 9.  As explained previously, the nature of the investigation is not dispositive.  However, in Booke's July 13, 2018, interview he did not oppose a practice made unlawful by Title VII, he simply explained the tense environment among his co-workers and his supervisor. SOF 12, 13, 14, 15. When EPA officials specifically asked Booke why he thought a particular argument occurred, Booke said:

> …they really have a communication problem.  And neither side seems to be willing to bend.  And so, I think that's the basis of the whole thing is a communications issue.

SOF 13, 14.

Booke also explained McGhee was thrust into an angry work environment without a leadership mentor to guide her.  Specifically stating,

> This is a leadership issue, not just at Shelly's level, but Shelly, Ben and Mike because nobody has – Shelly has very little actual leadership experience and she has come in here and has been dropped into this environment, that was already a little bitter and angry, and given no mentorship or guidance, just kind of let loose.

SOF 13, 14.

Booke never mentioned discrimination as a possible cause for McGhee's defensive interaction with Sandridge.  SOF 15.  Consequently, his participation in the Sandridge investigation---based on workplace bullying---did not constitute protected opposition to discrimination under Title VII.

*See Berroth v. Farm Bur. Mut. Ins. Co. Inc.,* 232 F. Supp. 2d 1244, 1250 (D. Kan. 2002).  Yet a second reason to dismiss Booke's Title VII retaliation claim under either Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56.

### C.  Booke's EPA Order 4711 retaliation claim was not protected opposition to discrimination under Title VII.

Under EPA Order 4711, an employee can file a retaliation complaint if he believes his supervisor retaliated against him for participating in a fact-finding investigation.  SOF 17. Approximately two months before Booke contacted an EEO Counselor, he filed an EPA Order 4711 complaint against McGhee because she allegedly subjected him to "ongoing workplace harassment and retaliation" that had been escalating since July 16, 2018.  SOF 18.  EPA Region 7 officials interviewed witnesses and after all information was collected, the deciding official found Booke's harassment and retaliation claims unsupported. SOF 20.

Again, EPA Region 7's internal investigation of Booke's harassment and retaliation complaint was not protected opposition to discrimination under Title VII.  Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6).

### D.  McGhee learned of Booke's EEO activity in April 2019.

Booke contacted an EEO Counselor on November 2, 2018, and on March 22, 2019, he filed his formal EEO complaint under Title VII.  SOF 22, 23.  Within nine days of filing his EEO Complaint, Booke voluntarily transferred to another EPA Region 7 branch.  SOF 29.  But it wasn't until April 2019 that McGhee first learned about Booke's Title VII EEO complaint.  SOF 25.  Consequently, from July 13, 2018 through April 2019, McGhee was unaware of Booke's EEO activity; therefore, he cannot state a Title VII retaliation case for events that occurred during that time.  *See Conkling v. Tri-State Careflight, LLC*, No. 1:14-CV-00234-WJ-KBM, 2017 WL 4564927, at *11 (D.N.M. Apr. 25, 2017) (citing *Petersen v. Utah Dept. of Corrections,*

301 F.3d 1182 (10th Cir. 2002) (no retaliation where retaliatory supervisor was unaware that employee engaged in protected opposition); *Carney v. Pena,* 992 F.Supp.1285, 1293 (D. Kan. 1998) (summary judgment granted on Title VII retaliation claim where person who designed the schedule change did not know plaintiff had filed a complaint).

The alleged retaliatory events in Booke's Complaint (Doc. 1) occurred before he engaged in Title VII EEO activity and before his supervisor learned he had engaged in Title VII activity. No genuine issue of material fact precludes dismissal under Fed. R. Civ. P. 56.

**E.  Booke's alleged adverse employment actions were not materially adverse.**

This court need not consider whether Booke's alleged adverse actions are materially adverse, but if it does, the alleged employment actions do not meet the reasonable person standard. Compl. ¶ 20.  *See Burlington Northern and Sante Fe Railroad v. White*, 548 U.S. 53, 69 (2006) (plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'").  The objective materially adverse requirement separates significant from trivial harms; it is not a general civility code for the workforce.  *Id.* (citations omitted).  Whether a given employment action is materially adverse is determined on a case-by-case basis "examining the unique factors relevant to the situation at hand."  *McGowan v. City of Eufala*, 472 F.3d 736, 742 (10th Cir. 2006) (quoting *Sanchez v. Denver Publ. Sch.,* 164 F.3d 527, 532 (10th Cir. 1998).  Petty slights, minor annoyances, or a simple lack of good manners, are not considered materially adverse actions.  *Id.* at 742.

Booke complained that McGhee micromanaged him, excluded him from meetings, bullied and denigrated him, changed his job duties, denied him training, and gave him a Fully

Successful performance rating.  Compl. ¶ 20.  Such incidents do not rise to the level of a materially adverse employment action that would dissuade a reasonable person from filing a charge of discrimination.  Changing job duties and excluding employees from meetings are not materially adverse. *See Heno v. Sprint/United Mgmt. Co*., 208 F.3d 847, 857 (10th Cir. 2000) (adverse employment action is determined on a case by case basis and does not extend to a mere inconvenience or alteration of job responsibilities); *Arthur v. Bloomfield School District*, 157 F. Supp. 3d 1055, 1063 (D. New Mex. 2015) (being excluded from approximately 5 meetings is simply not materially adverse enough to qualify as retaliation).

Giving an employee a Fully Successful performance rating is not materially adverse. After reviewing Booke's work performance from January 2018 through October 2018, McGhee appraised Booke's performance as Fully Successful.  SOF 28.  While Booke was obviously unhappy and disagreed with McGhee's rating, his annoyance does not create a materially adverse employment action.  *See Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994); *see also Brenna v. Salazar*, 2010 U.S. Cist. LEXIS 13793, 2010 WL 582357 *12 (D. Colo. Feb. 17, 2010 ("Fully Successful" performance appraisal did not constitute a materially adverse employment action as a matter of law).  Finally, denying Booke's request for training is not materially adverse.  McGhee sent Booke to training early in fiscal year 2018, but denied his second request for training after learning the IT Branch lacked funding to send any subordinate to training from July 2018 through the end of the fiscal year.  SOF 27.  Booke's requested training cost $3,000.  The only training McGhee approved for her employees during that timeframe was training provided free of cost.  *Id*.

Booke's alleged adverse employment actions are insufficient to sustain the second element of his prima facie case for Title VII retaliation.  Dismissal is appropriate under Fed. R. Civ. P. 56.

**F.  Booke cannot make a retaliatory hostile work environment claim.**

Booke's Complaint seeks to cobble together non-retaliatory workplace incidents to create a retaliatory hostile work environment.  Again, all alleged retaliatory incidents occurred before he engaged in Title VII protected activity.  *See Gorny v. Salazar*, 413 F. App'x 103, 112, (10th Cir. 2011) (alleged harassment must stem from retaliatory animus).  Because Booke fails to allege employment actions that occurred after he engaged in Title VII activity, the incidents complained of cannot constitute adverse employment actions to support his Title VII claim.

Defendant acknowledges a retaliatory hostile work environment may constitute a materially adverse action.  However, to do so, the offending conduct "must render 'the workplace ... permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Bittermann v. Zinke*, No. CV 18-0414 RB/KK, 2020 WL 3035227, at *9 (D.N.M. June 5, 2020) (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).  Here, Booke's allegations are more appropriately characterized as workplace annoyances and disagreements, not severe or pervasive conduct, not an abusive working environment, and not actions that are causally linked to *prior* EEO activity.  Booke's retaliatory hostile work environment claim fails.

## CONCLUSION

Booke cannot state a Title VII retaliation or retaliatory hostile work environment claim, nor can he create a genuine issue for trial.  This court should sustain Defendant's motion and enter judgment in his favor as a matter of law.

Respectfully submitted,

STEPHEN R. McALLISTER
United States Attorney

s/ Andrea L. Taylor
ANDREA L. TAYLOR
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730 (telephone)
(913) 551-6541 (facsimile)
KS Fed Bar # 70422
Email: Andrea.Taylor@usdoj.gov
ATTORNEYS FOR THE
UNITED STATES OF AMERICA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2020, the foregoing **<u>MEMORANDUM IN</u>**

**<u>SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE,</u>**

**<u>FOR SUMMARY JUDGMENT</u>** was electronically filed with the clerk of the court by using the

CM/ECF system which will send a notice of electronic filing to all counsel of record as of the

time of the filing.

s/ Andrea L. Taylor
ANDREA L. TAYLOR
Assistant United States Attorney
