**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **RAYMOND BOOKE,** | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Case No:  20-cv-02370-KHV-KGG |
| | ) |
| **ANDREW WHEELER**, Administrator | ) |
| U.S. Environmental Protection Agency, | ) |
| Defendant | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND IN THE ALTERNATIVE FOR SUMMARY
JUDGMENT**

SUBMITTED BY:
Greg N. Tourigny DKAN # 78874
THE TOURIGNY LAW FIRM LLC.
4600 Madison Avenue, Suite 810
Kansas City MO, 64112
(816) 945-2861
greg@tourignylaw.com

M. Shaun Stallworth, DKAN # 78332
HOLMAN SCHIAVONE, LLC
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
Email: sstallworth@hslawllc.com

ATTORNEYS FOR PLAINTIFF

## **TABLE OF AUTHORITIES**

**Cases**                                                                                               **Page(s)**

*Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986)……………………………….4

*McGarry v. Board of County Comm'rs of Pitkin County*, 175 F.3d 1193, 1201 (10th Cir. 1999).)…………………………………………………………………….…….6, 25

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248,(1986)). …………………….....20

*Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 559–60 (D.Kan.1995) …………...22

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)……...……………….22

*Plakio v. Congregational Home, Inc.,* 902 F.Supp. 1383, 1392 (D.Kan.1995). ……...…23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986))……...…23

*McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006). ………………….....29

*Burlington N. & Santa Fe Ry. Co. v. White,* 126 S. Ct. 2405, 2416,(2006)……………..29

**Statutes**

42 U.S.C. § 2000e-2……………………………………………………………………

Fed.R.Civ.P. 56(c)………………………………………………………………….20

COMES NOW Plaintiff, by and through his undersigned counsel, and hereby responds in Opposition to Defendant's Motion To Dismiss and in the alternative for Summary Judgment ("MSJ"). In support thereof, Plaintiff states the following:

### INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Raymond Booke has been an employee of the United States for 17 years. For the past six (6) years, Plaintiff worked at the Environmental Protection Agency as a Lead IT Specialist in the EPA Region 7 office, located in Lenexa, Kansas. Plaintiff brings this suit against Defendant Andrew Wheeler, Administrator U.S. Environmental Protection Agency ("EPA" or "Defendant") for unlawfully interfering with his employment in violation of Title VII of the 1964 Civil Rights Act. The facts will show that following Plaintiff's participation in an EEO age and gender complaint by a fellow co-worker, Plaintiff suffered adverse employment actions; wherein, he was denied training that was previously approved, his job functions were removed, and his performance assessments were downgraded.

Defendant puts the cart before the horse by moving to dismiss this case at such an early junction, before Discovery has even begun. Defendant did not provide this court with immeasurable evidence that Plaintiff could not meet the elements of a Retaliation claim. Instead, Defendant filled its Motion for Summary Judgment ("MSJ") with self-serving affidavits, half-truths and conclusory allegations that, put simply, do not measure up.

In its MSJ, Defendant improperly asks this Court to step into the shoes of a jury and weigh, then decide the evidence.  Yet, genuine issues of material fact exist in this case. Consequently, it is well-settled that questions of material fact and determinations of reasonableness are not questions of law but instead are for a jury to decide.  Indeed, there

are genuine disputes as to the claims alleged by Plaintiff, and sufficient evidence supporting his claims that could allow a reasonable jury to find in his favor. As such, and based on the following arguments, Defendant's MSJ should be denied. [1]

## PLAINTIFF'S RESPONSE TO DEFENDANT'S ALLEGED UNCONTROVERTED FACTS

### A. PARTIES

1. In 2018, Raymond Booke was one of two Lead Information Technology ("IT") Specialists in the Information Technology Branch ("IT Branch") of the Office Policy and Management, Mission Support Division of the EPA in Region 7. *See* Ex. A, Smocks Declaration ¶¶ 7, 9.

**Response: Undisputed.**

2. Shelly McGhee is the Chief of the IT Branch for Region 7 of the EPA. She has held that position since January 8, 2018. *See* Ex. B, McGhee Declaration ¶ 1; Compl. ¶ 8.

**Response: Undisputed.**

3. Before the EPA hired McGhee, Booke served as the Acting IT Branch Chief. *See* Ex. A, Smocks Declaration ¶ 8.

**Response: Undisputed.**

4. Along with Booke, McGhee was the direct supervisor of five employees in EPA Region 7's IT Branch: Lead IT Specialist Ray Booke (GS-14), Lead IT Specialist Michael

---

[1] Defendant refers to facts and documents outside of the four corners of the Complaint. Because of this, their motion should be treated as a Motion for Summary Judgement, and their Motion to Dismiss for Failure to State a Claim should disregarded. Plaintiff has successfully plead a *prima facie* case for Retaliation. "Where a party has moved to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and matters outside of the pleadings have been presented to the court for consideration, the court must either exclude the material or treat the motion as one for summary judgment." *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986)

Propst (GS-13), IT Specialist Diann Sandridge (GS-13), IT Specialist Brad Countryman (GS-12), IT Specialist Brandon Lewis (GS-12), and IT Specialist Tri Knoke (GS-12).  Ex. B, McGhee Declaration ¶ 2.

**Response: Disputed, in part.  Though McGhee supervised Booke and five other employees, Booke was not the direct supervisor of the employees in the Region 7 IT branch when McGhee was Branch Chief.** Ex. B, McGhee Declaration ¶ 2.

## B. EPA ORDER 4711 – PROCEDURE FOR ADDRESSING ALLEGATIONS OF WORKPLACE HARASSMENT

5.   On November 20, 2015, the EPA created a consistent and effective procedure for responding to allegations of workplace harassment through EPA Order 4711---"Procedure for Addressing Allegations of Workplace Harassment" (hereinafter "EPA Order 4711"). *See* Ex. A, Smocks Declaration ¶ 2 - Attachment A, EPA Order 4711.

**Response: Disputed, to the extent that the EPA Order 4711 is a consistent and effective procedure for responding to allegations of workplace harassment.**

6.   EPA Order 4711 fact-finding investigations take place for workplace actions that are threatening, intimidating, bullying, and/or disturbing.  *Id*. at ¶ 3 – Attachment A at Section III.

**Response: Disputed, to the extent that "investigations" always take place for workplace actions that are threatening, intimidating, bullying, and/or disturbing. Sandridge filed both an EEO and a 4711 bullying and harassment claim prior to July 13, 2018. Ex. B, Sandridge Declaration ¶ 15, 20, 21. Booke also filed an EEO claim and a 4711 claim. Ex. B, Booke Declaration ¶ 27. Tapia Declaration ¶ 14.**

7. Under EPA Order 4711, workplace bullying is a form of harassment that may be the subject of a fact-finding investigation. Workplace bullying may include the deliberate, hurtful, negative, repeated mistreatment of one or more employees. Examples of workplace bullying for purposes of EPA Order 4711 include constant and unfair criticism, teasing, yelling, insulting, malicious gossiping, and aggressive behavior. *See* Ex. A, Smocks Declaration, Attachment A at Section IV(A) and (K).

**Response: Undisputed, but immaterial. Sandridge filed both an EEO and a 4711 bullying and harassment claim prior to July 13, 2018. Ex. B, Sandridge Declaration ¶ 15, 20, 21. Booke also filed an EEO claim and a 4711 claim. Ex. B, Booke Declaration ¶ 27. Tapia Declaration ¶ 14. Further, Title VII makes it unlawful for an employer to retaliate against an employee for participating in certain protected activity, including opposing discrimination and/or participating in an investigation related to complaints of discrimination or harassment. *McGarry v. Board of County Comm'rs of Pitkin County*, 175 F.3d 1193, 1201 (10th Cir. 1999).**

8. The EPA Order 4711 procedure "is not intended to replace or impede the Equal Employment Opportunity Commission discrimination complaint process found at Title 29 C.F.R. Part 1614…." And it "sets forth a procedure separate from those processes." *Id*. ¶ 4 – Attachment A at Section I.

**Response: Undisputed, but immaterial. Sandridge filed both an EEO and a 4711 bullying and harassment claim prior to July 13, 2018. Ex. B, Sandridge Declaration ¶ 15, 20, 21. Booke also filed an EEO claim and a 4711 claim. Ex. B, Booke Declaration ¶ 27. Tapia Declaration ¶ 14. Further, Title VII makes it unlawful for an employer to retaliate against an employee for participating in certain protected**

**activity, including opposing discrimination and/or participating in an investigation related to complaints of discrimination or harassment.** *McGarry v. Board of County Comm'rs of Pitkin County*, **175 F.3d 1193, 1201 (10th Cir. 1999).**

**Sandridge's EPA Order 4711 workplace bullying complaint**

9.   In 2018, Diann Sandridge initiated a workplace bullying complaint under EPA Order 4711 against McGhee.  Compl. at 3 ¶ 11.

> **Response: Disputed, in part. Sandridge also filed an EEO action against McGhee. Ex. B, Sandridge Declaration ¶ 20, 21. Further, Smocks intentionally delayed and intentionally steered Sandridge's complaints to fit into a 4711. Ex. B, Sandridge Declaration ¶ 15 – 20.**

10. In her EPA Order 4711 complaint, Sandridge alleged that McGhee treated her in a bullying, aggressive, and intimidating manner.  *See* Ex. D, Tapia Declaration ¶ 2.

> **Response: Disputed, in part. Sandridge also made other complaints about McGhee, most notably regarding her being the only female, and the only person of retirement age. Ex. B, Sandridge Declaration ¶ 10 -20. Further, Smocks intentionally delayed and intentionally steered Sandridge's complaints to fit into a 4711. Ex. B, Sandridge Declaration ¶ 15 – 20.**

11. McGhee and her subordinates were interviewed in Sandridge's EPA Order 4711 fact-finding investigation (hereinafter "the Sandridge investigation").  *See* Ex. D, Tapia Declaration ¶ 6; Ex. B, McGhee Declaration ¶ 2.

**Response: Disputed, in part.  While all subordinates were interviewed, Booke was the only employee McGhee personally witnessed give a statement to Clever and Brees. See Booke Affidavit ¶ 16,**

12. Booke's interview in the Sandridge investigation was held on July 13, 2018. Compl. at 2 ¶ 9; *see also* Ex. D, Tapia Declaration ¶ 8.

**Response: Undisputed.**

13. On July 13, 2018, in response to EPA Region 7 officials fact-finding questions, Booke described the workplace tension between Sandridge, Propst, and McGhee as follows:

> …they really have a communication problem.  And neither side seems to be willing to bend.  And so, I think that's the basis of the whole thing is a communications issue.

> *See* Ex. D Tapia Declaration, Attachment A ¶ 9, Attachment A at 8 (bate stamp 00983).

**Response: Undisputed, but immaterial. Despite Sandridge having filed both an EEO complaint based upon gender and age discrimination against McGhee, Clever and Brees failed to ask Booke about Discrimination. Booke Affidavit ¶ 15. After the meeting, Booke sent an email to Clever and Brees stating further that Sandridge was singled out by McGhee and provided an account of how Sandridge was singled out by McGhee.  Booke Affidavit ¶ 17.**

14. On July 13, 2018, in response to questions, Booke also said:

> This is a leadership issue, not just at Shelly's level, but Shelly, Ben and Mike because nobody has – Shelly has very little actual leadership experience and she has come in here and has been dropped into this environment, that was already a little bitter and angry, and given no mentorship or guidance, just kind of let loose.

*Id*. at ¶ 10 Attachment A at 12 (bate stamp 00987).

**Response: Undisputed, but immaterial. Despite Sandridge having filed both an EEO complaint based upon gender and age discrimination against McGhee, Clever and Brees failed to ask Booke about Discrimination. Booke Affidavit ¶ 15. After the meeting, Booke sent an email to Clever and Brees stating further that Sandridge was singled out by McGhee and provided an account of how Sandridge was singled out by McGhee. Booke Affidavit ¶ 17.**

15. During Booke's July 13, 2018, interview, his Transcript did not reflect a concern that the conflict between McGhee and Sandridge occurred because of age or sex discrimination. *See* Ex. D, Tapia Declaration ¶ 11.

**Response: Undisputed, but immaterial. Despite Sandridge having filed both an EEO complaint based upon gender and age discrimination against McGhee, Clever and Brees failed to ask Booke about Discrimination. Booke Affidavit ¶ 15. After the meeting, Booke sent an email to Clever and Brees stating further that Sandridge was singled out by McGhee and provided an account of how Sandridge was singled out by McGhee. Booke Affidavit ¶ 17.**

16. Cecilia Tapia was the decision maker in the Sandridge investigation. *See* Ex. B, Tapia Declaration ¶ 1. After fully reviewing the fact-finding report, Tapia determined that Sandridge's workplace bullying allegations were unsupported. *Id*. at ¶ 12

**Response: Undisputed, but immaterial, Booke and Sandridge experienced retaliation after participating in the Sandridge investigation. See Booke Affidavit ¶ 20 - 34, Sandridge Affidavit ¶ 39 - 42. Title VII makes it unlawful for an employer to**

**retaliate against an employee for participating in certain protected activity, including opposing discrimination and/or participating in an investigation related to complaints of discrimination or harassment.** *McGarry v. Board of County Comm'rs of Pitkin County***, 175 F.3d 1193, 1201 (10th Cir. 1999).**

## Booke's EPA Order 4711 workplace harassment and retaliation complaint

17. Under EPA Order 4711, retaliation against any person who reports workplace harassment, or who participates in a fact-finding investigation, is prohibited and may result in disciplinary action, including dismissal. *See* Ex. A, Smocks Declaration ¶ 6.

**Response: Undisputed, but immaterial. Booke and Sandridge experienced retaliation after participating in the Sandridge investigation. See Booke Affidavit ¶ 20 - 34, Sandridge Affidavit ¶ 39 - 42. Title VII makes it unlawful for an employer to retaliate against an employee for participating in certain protected activity, including opposing discrimination and/or participating in an investigation related to complaints of discrimination or harassment.** *McGarry v. Board of County Comm'rs of Pitkin County***, 175 F.3d 1193, 1201 (10th Cir. 1999).**

18. On September 19, 2018, Booke sent an email to Michael Brincks stating that McGhee had subjected him to ongoing workplace harassment and retaliation that had been escalating since July 16, 2018. Ex. D, Tapia Declaration ¶ 13, Attachment B.

**Response: Undisputed.**

19. In response to Booke's email, EPA Region 7 officials conducted an additional EPA Order 4711 investigation. Ex. D, Tapia Declaration ¶ 14.

**Response: Undisputed, but immaterial. Booke and Sandridge experienced retaliation after participating in the Sandridge investigation. See Booke Affidavit ¶ 20 - 34, Sandridge Affidavit ¶ 39 - 42.Title VII makes it unlawful for an employer to retaliate against an employee for participating in certain protected activity, including opposing discrimination and/or participating in an investigation related to complaints of discrimination or harassment.** *McGarry v. Board of County Comm'rs of Pitkin County***, 175 F.3d 1193, 1201 (10th Cir. 1999).**

20. Cecilia Tapia was the decision maker for Booke's harassment and retaliation complaint; she reviewed the full fact-finding report regarding Booke's allegations and decided they were unsubstantiated.   Ex. D, Tapia Declaration ¶ 15.

**Response: Undisputed, but Immaterial. Title VII makes it unlawful for an employer to retaliate against an employee for participating in certain protected activity, including opposing discrimination and/or participating in an investigation related to complaints of discrimination or harassment.** *McGarry v. Board of County Comm'rs of Pitkin County***, 175 F.3d 1193, 1201 (10th Cir. 1999).**

## C.  TITLE VII EEO ACTIVITY

21. On November 2, 2018, Booke met with McGhee to discuss his annual performance appraisal.  Booke believed McGhee's comments on his performance appraisal highlight the extent McGhee was willing to go to "bully, retaliate, and harass" him for his previous 4711 activities.  Ex. C, Butkovich Declaration ¶ 4, Attachment A.

**Response: Disputed, Booke also complained to Butkovich about retaliation for engaging in protected activity.**

22. On November 2, 2018, Booke contacted an EEO Counselor to complain that McGhee retaliated against him for incidents that occurred on July 13, 2018 and November 2, 2018.  *See* Ex. C, Butkovich Declaration ¶ 3.

**Response: Undisputed.**

23. Booke filed a formal Complaint of Discrimination in the Federal Government (hereinafter "EEO Complaint") on March 22, 2019.  He checked the box next to retaliation and added "for participation in protected activity."  *See* Ex. C, Butkovich Declaration ¶ 5.

**Response: Undisputed.**

24. Once an EPA employee files a formal EEO complaint, an outside contractor is hired to investigate the matter.  Ex. C, Butkovich Declaration ¶ 6.

**Response: Undisputed, but immaterial. No facts in the record reflect that any employees were interviewed by an outside contractor for Sandridge's EEO complaint. Title VII makes it unlawful for an employer to retaliate against an employee for participating in certain protected activity, including opposing discrimination and/or participating in an investigation related to complaints of discrimination or harassment. *McGarry v. Board of County Comm'rs of Pitkin County*, 175 F.3d 1193, 1201 (10th Cir. 1999).**

25. McGhee first learned of Booke's Title VII EEO complaint in April 2019 when the EEO investigator contacted her by email to provide her response to Booke's formal EEO complaint.  *See* Ex. B, McGhee Declaration ¶ 5.

**Response: Disputed. Ms. McGhee had direct knowledge of plaintiff's interview with Clever and Brees because she walked into the room while plaintiff was meeting with investigators.  Booke Affidavit ¶ 16.**

### D.  MCGHEE'S EMPLOYMENT ACTIONS

26. McGhee was Booke's supervisor from January 2018 through March 2019.  While she supervised Booke, he never received discipline, lost pay, or suffered any tangible harm as a result of the alleged employment actions Booke details in paragraph 20 of his Complaint and Demand for Jury Trial.   *See* Ex B, McGhee Declaration ¶ 6.

**Response: Disputed, Booke suffered measurable harm, and number occurrences of substantial retaliation after July 13, 2018.  See Booke Affidavit ¶ 18 - 34, Sandridge Affidavit ¶ 27 – 36.**

27. McGhee sent Booke to training early in fiscal year 2018, but denied his second request for training after learning the IT Branch lacked funding to send any subordinate to training from July 2018 through the end of the fiscal year.  Booke's requested training cost $3,000.  The only training McGhee approved for her employees during that timeframe was training provided free of cost.  *Se*e Ex. C, McGhee Declaration ¶ 3.

**Response: Undisputed, but immaterial. McGhee had previously approved this same training for Booke Prior to July 13, 2018. *Se*e Ex. C, McGhee Declaration ¶ 3. After Booke's interview, the training was denied. See Ex. C, McGhee Declaration ¶ 3. McGhee sent the email denying Booke previously requested training *before* she requested funding for the training, and was denied. See Ex. 3 EEO report page 00744, 00758**

28. After reviewing Booke's work performance from January 2018 through October 2018, McGhee rated Booke's performance as Fully Successful.   *See* Ex. 4, McGhee Declaration ¶ 4.

**Response: Undisputed, but immaterial.  The "fully successful" rating is a negative rating in the EPA rating system.  Sandridge Affidavit ¶ 42. Booke had an outstanding work performance.  Sandridge Affidavit ¶ 24.**

29. Effective March 31, 2019, Booke was voluntarily reassigned to Security Specialist, GS-14, Security, Safety and Facilities Management Branch, Office of Policy and Management for EPA's Region 7.  He maintained the same, grade, step, and salary in this new position.  Ex. A, Smocks Declaration ¶ 9.

**Response: Disputed. Booke was forced to take a de facto demotion from Lead IT Specialist to Security Specialist. See Booke Affidavit ¶ 30-33, While he agreed to take the new position in order to get away from McGhee's harassment and retaliation, the new position stripped him of all previous job functions and was a demotion for all purposes except his rate of pay.  See Booke Affidavit ¶ 30-33. The transfer was detrimental to Bookes. 17-year career. See Booke Affidavit ¶ 34.**

## PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS.

30.      Sandridge and Booke sat next to each other from 2015 until March 2019 when Booke transferred out of McGhee's supervision. See Sandridge Affidavit ¶ 7.

31.      Booke witnessed McGhee's treatment of Sandridge, and Booke and Sandridge discussed Sandridge's harassment and the hostile work environment she was experiencing from McGhee. Sandridge Affidavit ¶ 7.

32.     McGhee and Booke would have conversations about her treatment of Sandridge, and Booke told McGhee that her harassment of Sandridge would create liability for the Agency. Booke Affidavit ¶ 9.

33.     Booke and Sandridge discussed Sandridge's EEO complaint, and Booke helped draft her EEO and 4711 complaint about McGhee. Sandridge Affidavit ¶ 8, Booke Affidavit ¶ 11.

34.     Booke and Sandridge discussed that her harassment was based upon her age and her being the only female under McGhee's supervision. Booke Affidavit ¶ 11, 13, Sandridge Affidavit ¶ 8, 9.

35.     Sandridge stated to EPA Region 7 Mission Support Deputy Director Ben Krehbiel and to investigators Brees and Clever that she felt that she was being harassed, that she was the only woman under McGhee and the only person of retirement age under McGhee's supervision.   See Sandridge Affidavit ¶ 10, 23.

36.     On May 15, 2018, Sandridge stated to EPA Region 7 Mission Support Deputy Director Ben Krehbiel that she felt she was being forced to retire.   *See* Sandridge Affidavit ¶ 10.

37.     Sandridge was the only woman and the only person of retirement age under Shelly McGhee's supervision from when she made her complaints in 2018. *See* Sandridge Affidavit ¶ 11, 23, Booke Affidavit ¶ 10.

38.     On May 16, Sandridge was contacted by Carla Smocks about her workplace harassment complaint. *See* Sandridge Affidavit ¶ 12.

39. On May 18, 2018,Sandridge made another complaint to Derrick Storm, stating: "I told him that she was being treated differently than the men and that I was the oldest person under McGhee's supervision." See Sandridge Affidavit ¶ 13.

40. Carla Smocks failed to provide Sandridge with all of her options for filing a harassment complaint against Shelly McGhee. *See* Sandridge Affidavit ¶ 14.

41. Despite saying to Ben Krehbiel and Carla Smocks that she felt she was being forced out, and that she was the only woman and the only person of retirement age, Krehbiel and Smocks failed to inform Sandridge of the option to file both a 4711 complaint, and an EEO complaint. See Sandridge Affidavit ¶ 17.

42. Sandridge was steered away from filing an EEO complaint by Smocks. *See* Sandridge Affidavit ¶ 18.

43. On June 8, 2018, Sandridge filed an internal EEO complaint against Shelly McGhee. *See* Sandridge Affidavit ¶ 20.

44. On June 16, 2018, Sandridge met with EEO Counselor Dennis Norwood. *See* Sandridge Affidavit ¶ 21.

45. Sandridge informed Norwood that she was in a hostile work environment based upon gender, age, retaliation, and that she felt she was being forced out by McGhee. *See* Sandridge Affidavit ¶ 22.

46. Before July 13, 2018, Booke and Ms. McGhee had a friendly and respectful working relationship. Booke Affidavit ¶ 8, Sandridge Affidavit ¶ 25.

47. Booke and McGhee would converse and joke and have friendly conversations very often, and McGhee would often come over to Booke's desk to speak with him. Sandridge Affidavit ¶ 26. Booke Affidavit ¶ 8, ¶ 9.

48.     Just Prior to July 13, 2018 plaintiff received a very positive mid-year PARS review from Ms. McGhee. Complaint ¶ 15.

49.     After July 13, 2018, plaintiff's working relationship immediately and drastically changed.  Booke Affidavit ¶ 18, Sandridge Affidavit ¶ 26.

50.     McGhee had direct knowledge of plaintiff's interview with Clever and Brees because she walked into the room while plaintiff was meeting with investigators.  Booke Affidavit ¶ 16.

51.     Despite Sandridge having filed both an EEO complaint based upon gender and age discrimination against McGhee, Clever and Brees failed to ask Booke about Discrimination. Booke Affidavit ¶ 15.

52.     After the meeting, Booke sent an email to Clever and Brees stating further that Sandridge was singled out by McGhee and provided an account of how Sandridge was singled out by McGhee.  Booke Affidavit ¶ 17.

53.     Plaintiff suffered denial of requested training, which were previously approved of by Ms.  McGhee. *See* Ex. 3 EEO report page 00758.

54.     Plaintiff was denied training by McGhee via email at 1:58 PM. Who stated there was not proper funding.  *See* Ex. 3 EEO report page 00758.

55.     McGhee did not send the email request for training for her group until 3:14PM *See* Ex. 3 EEO report page 00744.

56.     Plaintiff was denied training by McGhee and told that there was not funding for his requested training by McGhee before she sent in the requests for training.  *See* Ex. 3 EEO report page 00744.

57.     Plaintiff held the Information Security Officer (ISO) responsibilities for the branch since 2014. Booke Affidavit ¶ 21. Sandridge Affidavit ¶ 30.

58.     As the ISO, Booke was solely in charge of IT investigations for the branch and was the only person in branch who performed IT investigations. Booke Affidavit ¶ 21, 22. Sandridge Affidavit ¶ 32, 31.

59.     After July 13, 2018, McGhee removed Booke's ISO job functions, including IT security investigations, a job function in which plaintiff was the only qualified EPA employee in the branch.   Booke Affidavit ¶ 22, Sandridge Affidavit ¶ 34.

60.     Booke was the only employee in the EPA Region 7 office with the training and the qualifications to perform IT forensic investigations Booke. Affidavit ¶ 22, Sandridge Affidavit ¶ 32, 34.

61.     The ISO job function and responsibility was taken away from Booke, and given to Tri Knoke and other members of the Branch. Booke Affidavit ¶ 22, Sandridge Affidavit ¶ 32, 34.

62.     Tri Knoke did not have the same training and qualifications as Booke in order to perform IT investigations. Booke Affidavit ¶ 23, Sandridge Affidavit ¶ 35.

63.     Tri Knoke and McGhee compromised a forensic investigation due to their lack of training and experience. Booke Affidavit ¶ 24.

64.     The removal of Booke's Iso job functions was retaliatory, and to punish Booke, because the decision did not make sense from a business standpoint or an IT security standpoint. Booke Affidavit ¶ 25, Sandridge Affidavit ¶ 37.

65.     In   November   2018,   McGhee   removed   Booke's   Contract   Officer Representative (COR) job responsibilities, which Plaintiff had previously had since 2014. Booke Affidavit ¶ 19 26, Sandridge Affidavit ¶ 37.

66.     On November 2, 2018, Booke contacted EEO Officer Michael Butkovich to complain of retaliation against McGhee. Booke Affidavit ¶ 27.

67.     Plaintiff complained of retaliation based upon differential treatment and removal of his job duties after his participation in Ms. Sandridge's complaint in July, which constituted protected activity under Title VII.  Booke Affidavit ¶ 27, 28.

68.     Plaintiff received his first PARS annual review in which he did not receive an "Outstanding". See Ex. 3 EEO report page 00791-00797.

69.     Sandridge also received her first "Fully Successful" PARS review in her 35 years as a Federal employee in 2018.  Sandridge Affidavit ¶ 38.

70.     The "Fully Successful" rating is a negative rating in the EPA rating system. Sandridge Affidavit ¶ 34.

71.     Plaintiff was the only person under Ms. McGhee's supervision who received negative commentary on his PARS annual review. See Ex. 4 EEO report page: 000797:

72.     Plaintiff was prevented from attaching a rebuttal to his PARS annual review. *See* Complaint ¶ 20 (g).

73.     On March 22, 2019, Booke filed a formal Complaint of discrimination in the Federal Government based upon the retaliation he was experiencing from McGhee. Booke Affidavit ¶ 29.

74.     On March 31, 2019, Booke was offered a transfer to a Security Specialist position outside of McGhee's supervision. Booke Affidavit ¶ 30.

75.     In order to transfer away from McGhee, Booke was forced to give up his ISO title, and all other IT job functions. Booke Affidavit ¶ 31, 32.

76.     The Security Specialist position stripped plaintiff of all previous job functions and was a demotion in all aspect except pay. Booke Affidavit ¶ 33.

77.     The new position was detrimental to Booke's 27-year career as an IT Professional. Booke Affidavit ¶ 34.

78.     At all relevant times plaintiff's job performance was outstanding. See Sandridge Affidavit ¶ 24.

79.     Despite a "Fully Successful" rating on his 2018 PARS, Plaintiff received a "Gold Honor Award for his work on the DM Dashboard Implementation Team.  Ex 4. EEO report pages 00800-00811.

## ARGUMENT AND AUTHORITIES

### I.      SUMMARY JUDGMENT STANDARD

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id*. (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id*. (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). When viewing the record and drawing inferences, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). If the moving party presents evidence for summary judgment that comes from interested witnesses, such as its employees, the court should only give the evidence credence if it is neither contradicted nor impeached. *See id*. at 151. In the Arguments below, Plaintiff has set forth specific facts from which a rational trier of fact could find for Plaintiff.

## II.   SUBSTANTIAL EVIDENCE SUPPORTS PLAINTIFF'S CLAIMS OF RETALIATION UNDER TITLE VII.

Title II makes it unlawful for an employer to retaliate against an employee for participating in certain protected activity, including opposing discrimination. To establish a prima facie case of retaliation, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between her exercise of rights and the adverse employment action.[2] *McGarry v. Board of County Comm'rs of Pitkin County*, 175 F.3d 1193, 1201 (10th Cir. 1999). If the employee successfully states a *prima facie* case of retaliation, the burden then shifts to

---

[2] The United States' has not contested the third element of Plaintiff's Claim in their Motion to Dismiss and in the alternative for Summary Judgement. Therefore, for the purposes of each motion, Plaintiff has both pleaded and alleged facts sufficient to prove Causation. Plaintiff will address Defendants' arguments against the other two elements of Retaliation under Title VII below.

the employer to offer a legitimate, non-retaliatory reason for the adverse employment action. *Id.* The employee then bears the ultimate burden of demonstrating that the employer's proffered reason is pretextual[3]. *Id.*; *See* Section V below.

## A.  Plaintiff engaged in Protected Activity.

To demonstrate the first element of the prima facie case, Plaintiff must show that he engaged in protected opposition to discrimination. As indicated below, on multiple occasions, Plaintiff engaged in protected acts from July 13, 2018 until his final protected act on March 22, 2019. Specifically, Booke's participation in the Sandridge investigation constitutes protected activity under Title VII. Further, Booke filed both a workplace bullying and harassment claim, as well as an EEO complaint. These events support Booke's retaliatory hostile work environment claim. *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 559–60 (D.Kan.1995) ("It is well-established that an employee's express complaints to supervisors about perceived discriminatory practices constitutes protected activity.").

### i.   Pursuant to Defendant's policies and laws available to him, Plaintiff personally made complaints.

Though Defendant argues that Plaintiff did not actually allege discrimination, an employee is not required to use legal terms or buzzwords when opposing discrimination. *Wirtz v. Kansas Farm Bureau Servs., Inc.,* 274 F. Supp. 2d 1198, 1212 (D. Kan. 2003*).* Rather, so long as Plaintiff's complaints were based upon a good faith reasonable belief that a Title VII violation occurred, even if no violation actually took place, Plaintiff's

---

[3] In its motion, the United States does not offer any legitimate non-retaliatory reasons for Booke's negative treatment. Rather, the United States has only challenged that Plaintiff has not stated a *prima facie* case retaliation under Title VII.  Further, the United States has not cited the burden shifting analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 1825, 36 L. Ed. 2d 668 (1973), Therefore the court should consider the retaliatory acts committed against Booke as pretextual for the purposes of this motion.

opposition is protected. *See Plakio v. Congregational Home, Inc.,* 902 F.Supp. 1383, 1392

(D.Kan.1995). Here, Booke engaged in the following protected activities:

- Booke participated in Sandridge's 4711 investigation in which Sandridge made complaints that her treatment was because of her gender and age. SOF ¶ 12.
- Booke Emailed Clever and Brees that Sandridge was singled out by McGhee SOF ¶
- Booke emailed Mike Brincks about retaliation from McGhee. SOF ¶ 18
- Booke filed his own 4711 complaint of retaliation in September for retaliation based on prior protected activity. SOF ¶ 18
- On November 2, 2018, Booke contacted an EEO Officer Michael Butkovich to complain of retaliation against McGhee. SOF ¶39,
- Booke filed a formal Complaint of Discrimination in the Federal Government alleging retaliation on March 22, 2019.  SOF ¶ 23.

Booke was retaliated against in the following ways:

- Booke was denied training SOF ¶ 54 - 57
- Booke was de-facto demoted from Lead IT Specialist to Security Specialist SOF ¶ 77
- Booke received a "Fully Successful" rating on his 2018 PARS. SOF ¶ 69 - 71
- Booke had negative comments written on his 2018 PARS SOF ¶ 72
- Plaintiff was prevented from attaching a rebuttal to his 2018 PARS SOF ¶ 73
- Booke was stripped of his COR duties, which he had since 2014 SOF ¶ 66
- Booke was stripped of is ISO job functions which he had since 2014 SOF ¶ 58 - 65
- Booke was treated poorly and dismissively by McGhee SOF ¶ 50.

### ii.  Plaintiff's participation in the Sandridge investigation was protected activity under Title VII.

The United States argues that EPA 4711 complaints do not themselves constitute

protected activity, as they are not intended to replace the government's EEO procedure.

Again, Defendant engages in selective amnesia when it comes to the actual facts alleged in

this case. Indeed, the United States fails to mention that Sandridge did not *only* file a 4711

prior to July 2018, she also filed an EEO complaint. SOF ¶ 45.

"The court will find opposing activity if the employee's comments, when read in

their totality, oppose discrimination." *Wirtz at 1212.* Here, the Sandridge 4711

investigation occurred concurrently with Sandridge' EEO complaint for age/gender. SOF ¶ 44. Sandridge also repeated this complaint to Ben Krebiehl and separately to Derrick Storm. SOF ¶ 40-42. The EPA failed to properly investigate Sandridge's complaints against McGhee based upon gender and or age. SOF ¶ 36- 43. Despite the repeated complaints made by Sandridge that she felt this was because she was the only woman, and the only person of retirement age, the EPA failed to initiate an EEO complaint for Sandridge until she initiated one herself. SOF ¶ 42 - 46. In fact, Smocks intentionally diverted Sandridge's complaint to a 4711 investigation. SOF ¶ 36 - 43.

Whether or not the EPA acted on or regarded Sandridge's complaints as complaints of gender or sex discrimination does not change the fact that the issue was raised in course of the investigation. SOF ¶ 36, 37, 39, 46. Notably, Booke also helped Sandridge draft her complaints about McGhee, which raised the issue of discrimination based upon age and gender. SOF ¶ 34.

In her 4711 interview, Sandridge stated to investigators Clever and Brees that "she is the only woman and the only person of retirement age" working under McGhee. SOF ¶ 36. Despite this notion made by Sandridge in her interview, during his 4711 interview, Booke was not asked about discrimination based upon age or gender. SOF ¶ 52.

McGhee witnessed Plaintiff's interview, by walking into the room while Plaintiff was being interviewed. SOF ¶ 16. McGhee at that time could not know and would not whether the meeting was for a 4711 complaint or an EEO complaint. But by that date, both complaints had been filed by Sandridge. SOF ¶ 39 - 44. At this early point in the case, the factual record is silent (and therefore in dispute) as to whether McGhee walked in on any other interviews, or whether she was aware that the interview was for EEO purposes or for

4711 purposes. and therefore, the facts must be construed in Plaintiff's favor that McGhee walked in on Booke's interview, and only Booke's interview.

Regardless of the EPA's *intent* for the use of the 4711 investigation, and its apparently *intentional* steering of the investigation away from protected activity, protected activity occurred. *McGarry v. Board of County Comm'rs of Pitkin County*, 175 F.3d 1193, 1201 (10th Cir. 1999) (Title VII makes it unlawful for an employer to retaliate against an employee for participating in certain protected activity, including opposing discrimination and/or participating in an investigation related to complaints of discrimination or harassment.).

### iii. Plaintiff opposed discrimination during and before the Sandridge investigation.

"Is well-established that an employee's express complaints to supervisors about perceived discriminatory practices constitutes protected activity." *Garcia-Paz v. Swift Textiles, Inc*., 873 F. Supp. 547, 559–60 (D. Kan. 1995). Here, Plaintiff had conversations with McGhee in which he told her that she was harassing Sandridge, and that her harassment would create liability for the Agency. SOF ¶ 33. Plaintiff was aware of and assisted in filing Sandridge's complaints based upon age and gender against McGhee. SOF ¶ 34. In addition to participating in the investigation, Plaintiff further opposed discrimination on behalf of Sandridge by sending an email to the investigators showing that McGhee harassed and singled out Sandridge. SOF ¶ 53.

The Sandridge 4711 investigation should have been an EEO investigation but for the purposeful obstruction by Smocks. SOF ¶ 40-42. Sandridge complained to Krebeil, Smocks and Storm that her harassment and hostile work environment were because she

was a woman and her age. SOF ¶ 40. In addition to the 4711, Sandridge filed an EEO claim. SOF ¶ 44. When McGhee walked in on Plaintiff's 4711 meeting with Clever and Brees, there was no way for McGhee to know at that time whether Booke was participating in the EEO investigation or the 4711 investigation.

### iv. Even if Plaintiff's participation in the Sandridge investigation was not protected activity, Plaintiff's informal EEO Complaint in November was protected activity under the opposition clause of Title VII.

In his complaint with Butkovich, Plaintiff exercised a reasonable good faith belief that he engaged in prior protected activity. SOF ¶ 22, 67. A reasonably good faith belief is all that is required for a plaintiff's complaint of discrimination or retaliation to be protected under Title VII. *See Plakio v. Congregational Home, Inc.,* 902 F.Supp. 1383, 1392 (D.Kan.1995).

Defendant argues that Booke's November 2 informal complaint with Butkovich was not protected activity because Booke's participation in the Sandridge investigation was not protected activity. Defendant further argues that an internal investigation is not protected activity under the Title VII "participation clause". Defendant's arguments miss the mark in that Booke's informal EEO complaint *is* protected under the opposition clause of Title VII, not the participation clause.

On November 2, 2018, Booke filed an informal EEO complaint with EEO Officer Michael Butkovich to complain of retaliation against McGhee. SOF ¶ 22, 67. Plaintiff complained of retaliation based upon differential treatment and removal of his job duties after his participation in Ms. Sandridge's complaint in July, which he reasonably believed constituted protected activity under Title VII SOF ¶ 67.

> **v.  Plaintiff's Formal EEO Complaint is Protected Activity under the Participation Clause of Title VII, and Plaintiff experienced retaliation after the filing of his formal complaint.**

Booke filed a formal EEO complaint on March 22, 2019. After initiating his own 4711 and EEO complaints of retaliation against McGhee, Plaintiff was *forced* to move to new position with the EPA in order to get away from McGhee. SOF ¶ 75, 76. While Defendant's assertion that Plaintiff moved teams voluntarily is technically a correct statement, it is only a half-truth. Plaintiff accepted the transfer as it was the only option provided to him in order to get out of the retaliatory, hostile and belittling management environment under McGhee. SOF ¶ 75, 76.  Plaintiff's position under McGhee was Lead IT Specialist. SOF ¶ 1. Plaintiff's new position after his transfer was Security Specialist. SOF ¶ 75. The change from Lead IT Specialist to Security specialist was a de-facto demotion.  SOF ¶ 77.  The Security Specialist Position was a demotion for all intents and purposes except for rate of pay, and stripped Plaintiff of each and every job function he had as a Lead IT Specialist.  SOF ¶ 77, 78.  As another form of retaliation for lodging a complaint, Plaintiff was faced with a lose – lose decision; he could stay in a harassing work environment or take a demotion.

Under the participation clause of Title VII, filing of an EEO complaint, such as a charge of discrimination with the EEOC, or a formal EEO complaint with the Federal Government, is protected activity. Again, a plaintiff need only provide a reasonable good faith belief in discrimination for the filing to be protected activity.  *See Plakio,* 902 F.Supp. at 1392.

Booke's filing of a formal EEO complaint in March is also protected activity under Title VII.  Therefore, even if Booke's participation in the 4711 on July 13, 2018 was not

protected activity under Title VII, his complaint of retaliation for engaging in protected activity certainly was. Because of this, Booke has successfully established a prima facie case of Retaliation under Title VII.

### vi. When McGhee learned of Plaintiff's EEO complaint is irrelevant as his complaint is about retaliation, he previously experienced from McGhee.

The United States uses flawed logic in their argument as to when McGhee learned of Plaintiff's EEO complaint.  Plaintiff's complaint is of retaliation, for events that previously occurred. A person cannot complain of retaliation before they have been retaliated against.  After participating in Standridge's investigation into harassment and bullying based upon her age and gender by McGhee, Plaintiff was subjected to retaliation by McGhee. SOF ¶ 50, 54-57, 58-65, 69-73, 77, 78. At minimum, Plaintiff engaged in protected activity on July 13, 2018, September 19, 2018, and November 2, 2018. Consequently, the negative workplace affects Plaintiff experienced over the next nine months constituted retaliation.  SOF ¶ 50, 54-57, 58-65, 69-73, 77, 78.

McGhee learning about the EEO complaint in April 2019, does not change the events that previously occurred, or undo Plaintiff's damages.

### B. Plaintiff's adverse employment actions were materially adverse.

As indicated in Section II.A above, Plaintiff experienced material adverse actions following his protected activity. Nonetheless, the United States' argument belittles and dismissed Plaintiff's complaints as trivial. In citing *McGowan*, The United States argues that "petty slights, minor annoyances, or a simple lack of good manners are not considered materially adverse actions."  The Plaintiff in *McGowan* was given a shift change to an identical job. The job change was the same in every way except for the time of day that the plaintiff was at work.  *McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006).

Further, the case *McGowan* cites for the operative language is *Burlington N. & Santa Fe Ry. Co. v. White,* 126 S. Ct. 2405, 2416, (2006) (internal citation omitted). Burlington goes on to set the principle that: "Almost every job category involves some responsibilities and duties that are less desirable than others. Common sense suggests that one good way to discourage an employee such as White from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable. That is presumably why the EEOC has consistently found 'retaliatory work assignments' to be a classic and 'widely recognized' example of 'forbidden retaliation.' *Id.* (Holding that a demotion is not necessary for a reassignment to be materially adverse, but a reassignment to a less desirable position, even with the same job title, was materially adverse.)

When compared with Plaintiff's complaint, and with the statement of facts above, the actions Plaintiff claims are retaliatory go far and beyond "petty slights and minor annoyances". Unlike *McGowan,* Plaintiff did not merely suffer the "petty slight" of a denial of a shift change. Instead, Plaintiff suffered the removal of his job responsibilities, a negative review, and a de facto demotion, which set back his career with the Federal Government and his career as an IT professional. A removal of job functions, especially a function which Plaintiff was uniquely situated and uniquely equipped to perform within his team, cannot be compared to a 'petty slight'. Like in *Burlington*, Plaintiff was moved from a more desirable position, to a much less desirable position after engaging in the protected activity of filing a formal charge of discrimination.  A de facto demotion cannot be compared to a "petty slight". Derailing a stellar 17-year career cannot be compared to a "minor inconvenience".

Further, even if we assumed, *arguendo,* that each incident Plaintiff cites as retaliatory would not by itself be considered retaliatory, all of Plaintiff's complaints together would reach the level of retaliation.

**III.    Plaintiff has successfully plead and shown a retaliatory hostile work environment claim.**

Even if we made the logical leaps the United States requests, and we assumed, *arguendo,* that Plaintiff's conversations with McGhee, Plaintiff participation in the Sandridge investigation, Plaintiff's numerous complaints of retaliation, and Plaintiff's informal complaint to EEO officer Butkovich were somehow not protected activity – Plaintiff would *still* have shown a *prima facie* case of retaliation under Title VII.

Plaintiff engaged in unchallengeable protected activity when he filed his Formal EEO complaint in March 2019. *After* Plaintiff filed his EEO complaint, he was transferred to a less desirable position. Indeed, Protected activity followed by retaliation.

Plaintiff has successfully plead a prima facie case of Title VII retaliation and provided substantial evidence of numerous disputed material facts. Therefore, Defendant's motion to dismiss and in the alternative for Summary Judgement should be denied.

Respectfully submitted

The Tourigny Law Firm, LLC

By:___Greg N. Tourigny_____
        Greg N. Tourigny DKAN # 78874
        4600 Madison Avenue, Suite 810
        Kansas City MO, 64112
        (816) 945-2861
        greg@tourignylaw.com

        HOLMAN SCHIAVONE, LLC

M. Shaun Stallworth, DKAN #78332
Holman Schiavone, LLC
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Phone: 816.283.8738
Fax: 816.283.8739
sstallworth@hslawllc.com

ATTORNEYS FOR PLAINTIFF