IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| RAYMOND BOOKE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 20-2370-KHV |
| | ) | |
| ANDREW WHEELER, Administrator | ) | |
| U.S. Environmental Protection Agency, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Raymond Booke filed suit against Andrew Wheeler in his capacity as Administrator of the United States Environmental Protection Agency ("EPA"), alleging that the EPA retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. This matter is before the Court on Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment (Doc. #6) filed November 9, 2020. For reasons stated below, the Court overrules defendant's motion.[1]

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c);

---

[1] In lieu of an answer, defendant filed a motion to dismiss or for summary judgment. Both parties have relied on evidence outside the complaint and followed the procedure for a summary judgment motion under Rule 56, Fed. R. Civ. P. Accordingly, the Court construes defendant's motion solely as one under Rule 56. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51.  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251–52.

## Factual Background

The following material facts are uncontroverted, deemed admitted or, where controverted, viewed in the light most favorable to plaintiff, the non-movant.

In 2018, plaintiff was one of two Lead Information Technology ("IT") Specialists in the IT Branch of the Office of Policy and Management, Mission Support Division of EPA Region 7. Since January 8, 2018, Shelly McGhee has been Chief of the IT Branch. Before the EPA hired McGhee, plaintiff served as Acting Chief of the IT Branch. Beginning January 8, 2018, McGhee directly supervised plaintiff, Lead IT Specialist Michael Propst, IT Specialist Diann Sandridge, IT Specialist Brad Countryman, IT Specialist Brandon Lewis and IT Specialist Tri Knoke.

**I.     EPA Order 4711**

On November 20, 2015, EPA implemented Order 4711, which is a procedure for responding to allegations of workplace harassment. Specifically, EPA Order 4711 authorizes fact-finding investigations for workplace actions that were threatening, intimidating, bullying or disturbing. EPA Order 4711 notes that workplace bullying may include the deliberate, hurtful, negative, repeated mistreatment of one or more employees. The order cites examples of workplace bullying as constant and unfair criticism, teasing, yelling, insulting, malicious gossiping and aggressive behavior. The EPA Order 4711 procedure is "not intended to replace or impede the Equal Employment Opportunity Commission discrimination complaint process found at Title 29 C.F.R. Part 1614" and sets forth "a procedure separate from those processes." EPA Order 4711 prohibits retaliation against a person who reports workplace harassment, or who participates in a fact-finding investigation and retaliation may result in disciplinary action, including dismissal.

**II.    Sandridge Allegations And Investigation**

Between January of 2018 and March of 2019, McGhee supervised both Sandridge and plaintiff, who sat next to each other. At some point between January and July of 2018, plaintiff and Sandridge discussed how McGhee harassed Sandridge and created a hostile work environment for her. Plaintiff also talked to McGhee about how she treated Sandridge. Plaintiff told McGhee

that her harassment of Sandridge would create liability for the agency.

On May 15, 2018, under EPA Order 4711, Sandridge filed with Ben Krehbiel, Deputy Director of the EPA Region 7 Mission Support division, a workplace harassment and hostile work complaint. In part, Sandridge alleged that McGhee treated her in a bullying, aggressive and intimidating manner. Sandridge told Krehbiel—and investigators Angela Brees and Kathleen Clever—that (1) she felt that McGhee was harassing her and (2) she was the only woman and only person of retirement age under McGhee's supervision.

On May 16, 2018, Carla Smocks, a lead human resources specialist, contacted Sandridge about her complaint. Smocks did not explain to Sandridge all of her options for filing a harassment complaint against McGhee. Sandridge informed Krehbiel and Smocks that she felt she was being forced out, and that she was the only woman or person of retirement age under McGhee's supervision.

On May 18, 2018, after Krehbiel told Sandridge that Smocks or Derrick Storm would contact her about her hostile work environment complaint, Sandridge met with Storm for about an hour. Sandridge told Storm that McGhee treated her "differently than the men" and that she was "the oldest person under McGhee's supervision."

On June 8, 2018, Sandridge filed an informal EEO complaint against McGhee, which the EPA forwarded to its Office of Civil Rights ("OCR") division. On or about June 16, 2018, Sandridge met with EEO Counselor Dennis Norwood. Sandridge told Norwood that she was in a hostile work environment based upon gender, age and retaliation, and she felt that McGhee was forcing her out.

On July 13, 2018, as part of the Sandridge investigation, Brees and Clever interviewed plaintiff. Plaintiff described the workplace tension between Sandridge, Propst (her fellow IT

specialist) and McGhee as follows: "they really have a communication problem. And neither side seems to be willing to bend. And so, I think that's the basis of the whole thing is a communications issue." Plaintiff also said: "[t]his is a leadership issue, not just at [McGhee's] level, but [McGhee, Krehbiel and Propst] because nobody has – [McGhee] has very little actual leadership experience and she has come in here and has been dropped into this environment, that was already a little bitter and angry, and given no mentorship or guidance, just kind of let loose."

During his interview, plaintiff did not assert that the conflict between McGhee and Sandridge occurred because of age or sex discrimination, but Clever and Brees did not ask plaintiff about these topics. McGhee knew of plaintiff's interview with investigators because she walked into the room during the interview. After the meeting, plaintiff sent an email to Clever and Brees stating that McGhee had singled out Sandridge. As an example, plaintiff noted that a formal counseling letter which McGhee sent Sandridge was "completely unnecessary" and "blatantly wrong in most respects."

Cecilia Tapia, who reviewed the fact-finding report in the Sandridge investigation on behalf of the EPA, concluded that Sandridge's allegations of workplace bullying were unsupported.

On July 17, 2018, Sandridge filed a formal EEO complaint.

In June and July of 2018, plaintiff and Sandridge discussed Sandridge's EEO complaints and that McGhee's harassment was based on age and sex. Plaintiff helped Sandridge draft her complaint under EPA Order 4711 and her informal and formal EEO complaints.[2]

---

[2]      Defendant does not deny that plaintiff assisted Sandridge in drafting "her EEO and 4711 complaint about McGhee." Defendant's Reply To Plaintiff's response To Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment (Doc. #13) filed January 6,
(continued . . .)

### III. Plaintiff's Allegations

Before July 13, 2018, plaintiff and McGhee had a friendly and respectful working relationship. Shortly before July 13, 2018, McGhee gave plaintiff a very positive mid-year performance review. Immediately after July 13, 2018, plaintiff's working relationship with McGhee drastically changed.

Early in fiscal year 2018, McGhee approved plaintiff's request for training. On July 11, 2018, plaintiff asked McGhee to approve another training program which cost $3,000 plus travel expenses. On July 16, 2018 at 1:58 PM, McGhee emailed plaintiff, explaining that it appeared that the EPA did not have funding to cover the requested training. Later that day, at 3:14 PM, McGhee sent Krehbiel an email which outlined two training requests (including plaintiff's) that McGhee had received from her team. McGhee understood that from July of 2018 through the end of the fiscal year, the IT Branch lacked funding to send any subordinate to training, and she only approved training that was free. McGhee ultimately denied plaintiff's request, informing him that the EPA did not have the available funding.

Since 2014, plaintiff held the Information Security Officer ("ISO") responsibilities for the branch. As ISO, plaintiff was responsible for IT security investigations. Plaintiff was the only EPA branch employee with the necessary training and qualifications to perform IT security investigations and no other employees conducted such investigations. Shortly after July 13, 2018, McGhee removed plaintiff's ISO job functions, including IT security investigations. McGhee gave plaintiff's ISO job responsibilities to Tri Knoke (an IT Specialist), and other branch

---

²(. . . continued)
2021 at 16. Because plaintiff's declaration does not distinguish between Sandridge's informal and formal EEO complaints and defendant has not controverted this fact, the Court assumes that plaintiff helped Sandridge draft both EEO complaints.

employees. After McGhee transferred plaintiff's ISO job functions, Knoke and McGhee compromised an IT security investigation due to their lack of training and experience. McGhee lacked a business or IT security reason for transferring plaintiff's ISO job functions to other employees.

On September 19, 2018, plaintiff sent an email to Michael Brincks, an EPA Assistant Regional Administrator, stating that McGhee had subjected him to workplace harassment and retaliation that had been escalating since July 16, 2018. In response, EPA Region 7 officials conducted an investigation under EPA Order 4711. After reviewing a fact-finding report, Tapia concluded that plaintiff's allegations were unsubstantiated.

The EPA Performance Appraisal form included an end-of-year rating with five options to rate employee performance: (1) outstanding, (2) exceeds expectations, (3) fully successful, (4) minimally satisfactory and (5) unacceptable. McGhee met with plaintiff to discuss his annual review. She gave plaintiff a rating of "fully successful," even though his job performance was outstanding and he had never received a rating below "outstanding" in 15 years at the EPA.[3] That day, McGhee removed plaintiff's Contract Officer Representative job responsibilities which he had held since 2014.

Later, on November 2, 2018, plaintiff contacted EEO Officer Michael Butkovich to complain that McGhee was retaliating against him for "speaking out against her . . . during previous 4711 activities." Specifically, plaintiff believed McGhee's comments on his performance appraisal highlighted the extent she was willing to go to "bully, retaliate, and harass" him for his previous 4711 activities. Plaintiff also told Butkovich that in retaliation for his participation in the

---

[3] Likewise, in 2018, McGhee gave Sandridge a rating of "fully successful," even though she had never received such a rating before and normally received ratings of "outstanding" or "exceeds expectations."

Sandridge investigation, McGhee treated him differently and removed his ISO job duties.

On March 22, 2019, plaintiff filed a formal Title VII EEO Complaint with the OCR division. Plaintiff asserted that defendant had retaliated against him for participation in protected activity. McGhee learned of plaintiff's EEO complaint in April of 2019, when an EEO investigator contacted her to provide a response.

On March 31, 2019, plaintiff accepted an offer to transfer to a job as Security Specialist, Security, Safety and Facilities Management Branch, Office of Policy and Management for EPA Region 7, a position that McGhee did not supervise. Plaintiff maintained the same grade, step and salary in the new position. Even so, plaintiff had to give up his ISO title and all of his IT job functions.

During McGhee's supervision of plaintiff, from January of 2018 through March of 2019, plaintiff never received any formal discipline or lost pay.

On July 31, 2020, plaintiff filed suit under Title VII and the ADEA, asserting a single claim of retaliation. Defendant asserts that the EPA is entitled to summary judgment on plaintiff's retaliation claim under Title VII because plaintiff cannot establish a prima facie case.[4]

**Analysis**

Title VII makes it unlawful for an employer to retaliate against an employee "because he

---

[4] Defendant did not seek summary judgment on plaintiff's retaliation claim under the ADEA and the Court need not address that claim.

Plaintiff's complaint also invokes the anti-retaliation provisions in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and the Rehabilitation Act, 29 U.S.C. § 701 et seq., but these citations appear erroneous. Complaint And Demand For Jury Trial (Doc. #1) filed July 31, 2020, ¶¶ 3–4. Plaintiff did not list either statute under the cause of action in his civil cover sheet. Civil Cover Sheet (Doc. #1-1) (cause of action under Title VII and ADEA). Because plaintiff has not alleged any facts to support a claim under the ADA or the Rehabilitation Act and does not argue that he asserts such a claim, the Court declines to construe the complaint as asserting claims under those statutes.

has opposed any practice made an unlawful employment practice" under Title VII or "participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e–3(a).  To establish a prima facie claim of Title VII retaliation, plaintiff must show that (1) he engaged in protected activity; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.  Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2002).

Here, defendant argues that plaintiff cannot show that (1) he engaged in protected activity under Title VII or (2) he suffered any materially adverse action.

**I.      Protected Activity Under Title VII**

To establish that he engaged in protected activity under Title VII, plaintiff must show that he either (1) opposed an employment practice that violated Title VII ("opposition clause") or (2) participated in a Title VII investigation ("participation clause").  See 42 U.S.C. § 2000e–3(a).  Plaintiff alleges that he engaged in protected activity when he (1) participated in the investigation of Sandridge's 4711 complaint filed in May of 2018, (2) filed his own 4711 complaint on September 19, 2018, (3) contacted an EEO officer on November 2, 2018 and (4) filed a formal EEO complaint on March 22, 2019.  Defendant does not dispute that plaintiff's contact with an EEO officer and his later filing of a formal EEO complaint constitute protected activity under Title VII.  Defendant argues, however, that as a matter of law, plaintiff's participation in the Sandridge investigation and his own 4711 complaint do not constitute protected activity.

Under the "opposition clause," an employer cannot retaliate against an employee "because he has opposed any . . . unlawful employment practice" under Title VII.  42 U.S.C. § 2000e–3(a).  To show protected activity under the opposition clause, plaintiff must show that he based his conduct on a reasonable, good faith belief that he was opposing discrimination.  See Fassbender

v. Correct Care Sols., LLC, 890 F.3d 875, 890 (10th Cir. 2018); Crumpacker v. Kansas Dep't of Hum. Res., 338 F.3d 1163, 1171 (10th Cir. 2003). Plaintiff need not establish that his employer committed an actual Title VII violation. See Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1015–16 (10th Cir. 2004). Even so, a "vague reference to discrimination and harassment" without any specific indication that the alleged conduct was motivated by a category protected by Title VII does not constitute protected activity. Anderson v. Acad. Sch. Dist. 20, 122 F. App'x 912, 916 (10th Cir. 2004); see Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1203 (10th Cir. 2008) (no magic words required, but employee must convey to employer concern that employer has engaged in practice made unlawful by statute).

Under the "participation clause," an employer cannot retaliate against an employee "because he has . . . participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). The participation clause is "designed to ensure that Title VII protections are not undermined by retaliation against employees who use the Title VII process to protect their rights." Vaughn v. Epworth Villa, 537 F.3d 1147, 1151 (10th Cir. 2008) (quoting Brower v. Runyon, 178 F.3d 1002, 1006 (8th Cir. 1999)). The participation clause broadly protects proceedings and activities which occur in conjunction with or after the filing of a formal EEOC charge. EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000). But it does not include participating in "an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." Id. (participation clause did not include involvement in employer's internal investigation before filing EEOC charge); see also Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs., 683 F. App'x 691, 703 (10th Cir. 2017) (participation clause does not include "participation in an internal employer investigation unrelated to a formal EEOC charge") (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 316 (2d

Cir. 2015)) (internal quotation marks omitted).

Plaintiff argues that his statements about Sandridge and participation in the Sandridge investigation qualify as protected activity under both the participation and opposition clauses. <u>Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss And In The Alternative For Summary Judgment</u> (Doc. #10) at 23–25.  Because plaintiff's conduct involving Sandridge's allegations was *before* Sandridge filed a formal EEO charge, his conduct is not protected under the participation clause.  <u>See</u> <u>Poff</u>, 683 F. App'x at 703 (participation clause "only encompasses participation in formal EEOC proceedings") (quoting <u>Littlejohn</u>, 795 F.3d at 316); <u>see also</u> <u>EEOC v. Total Sys. Servs.</u>, 221 F.3d at 1174 (participation clause did not include involvement in employer's internal investigation before filing EEOC charge).  Even so, for reasons stated below, plaintiff has presented evidence to create a genuine issue of material fact whether his statements and participation in the Sandridge investigation are protected under the opposition clause.

Under the opposition clause, plaintiff's statements and participation in the Sandridge investigation are protected if he honestly and reasonably believed that he was opposing sex discrimination.  <u>Fassbender</u>, 890 F.3d at 891.  While Sandridge's 4711 complaint and plaintiff's statements to McGhee and investigators did not specifically mention sex or sex discrimination, the present record supports the inference that plaintiff honestly and reasonably believed that he was opposing sex discrimination.  In May of 2018, Sandridge told Krehbiel and EPA investigators that McGhee was harassing her and that she was the only woman and only person of retirement age under McGhee's supervision.  Moreover, on May 18, 2018, Sandridge followed up with Storm, stating that McGhee treated her "differently than the men" and that she was the oldest person under McGhee's supervision.  On June 8, 2018, Sandridge filed an internal EEO complaint against

McGhee. On or about June 16, 2018, Sandridge told the EEO Counselor that she was in a hostile work environment based upon gender, age and retaliation. Plaintiff was familiar with Sandridge's allegations because he helped draft her 4711 and EEO complaints. Specifically, plaintiff and Sandridge discussed Sandridge's belief that McGhee's harassment was based on her sex and age. Sometime in May, June or July of 2018, when plaintiff told McGhee that her harassment of Sandridge would create liability for the agency, he could have reasonably concluded that McGhee understood that he was referring to liability because of sex or age discrimination. Likewise, on July 13, 2018, when plaintiff participated in an interview and emailed EPA investigators that McGhee gave Sandridge a formal counseling letter that was "completely unnecessary" and "blatantly wrong in most respects," he could have reasonably concluded that the investigators understood that he was opposing sex discrimination by noting an example where McGhee singled out the only female under her supervision. Viewing the evidence in a light most favorable to plaintiff, a reasonable jury could conclude that plaintiff honestly and reasonably believed that when he told McGhee that her actions against Sandridge would create liability for the agency and when he participated in the Sandridge investigation, he was opposing sex discrimination.[5]

---

[5] Defendant argues that even if plaintiff engaged in "protected activity," McGhee did not know about it. Memorandum In Support Of Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment (Doc. #7) at 12. As explained above, however, to determine whether conduct is protected activity under the opposition clause, the Court evaluates whether *plaintiff* honestly and reasonably believed that he was opposing sex discrimination. Fassbender, 890 F.3d at 891. McGhee's knowledge of plaintiff's activities goes to the causation element, but defendant did not seek summary judgment on that ground. Moreover, defendant only provides evidence that McGhee did not know about plaintiff's formal EEO complaint until April of 2019. See Declaration Of Shelly McGhee (Doc. #7-3), ¶ 5. Defendant does not address McGhee's knowledge of plaintiff's activities related to the Sandridge investigation and her understanding whether Sandridge's complaints involved allegations of sex discrimination.

Accordingly, the Court overrules defendant's motion for summary judgment on this ground.[6]

## II.     Materially Adverse Action

Defendant argues that plaintiff cannot show that he suffered any materially adverse action. In the context of a retaliation claim, a materially adverse action is one that might dissuade a reasonable worker from making or supporting a charge of discrimination. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010).  Whether an employer's particular action is materially adverse depends on all "the circumstances of the particular case . . . judged from the perspective of a reasonable person in plaintiff's position." Burlington, 548 U.S. at 71.  The purpose of focusing on the perspective of a reasonable worker in plaintiff's position is to "screen out trivial conduct" such as "petty slights, minor annoyances, and simple lack of good manners" from conduct that is likely to dissuade employees from complaining or assisting in complaints of discrimination.  Id. at 68, 70; see Johnson v. Weld Cty., Colo., 594 F.3d 1202, 1216 (10th Cir. 2010).

Here, plaintiff asserts that because of his protected activity, he suffered the following materially adverse actions: (1) from July of 2018 through March of 2019, McGhee and his supervisors gradually removed all of his IT job functions, (2) in July of 2018, McGhee denied his request for training, (4) in November of 2018, McGhee gave plaintiff a performance rating two levels below "outstanding," (5) McGhee bullied and denigrated him, (6) McGhee excluded him

---

[6] Defendant also asserts that the filing of plaintiff's 4711 complaint in September of 2018 does not constitute protected activity under Title VII.  Because plaintiff's 4711 complaint alleged that defendant retaliated against him for his involvement in the Sandridge investigation where he opposed sex discrimination, a reasonable jury could conclude that when plaintiff filed his 4711 complaint, he honestly and reasonably believed that he was opposing unlawful retaliation in violation of Title VII.

from meetings that he would be expected to attend based on his job position and (7) on March 31, 2019, so that he could avoid McGhee as a supervisor, he transferred to a new position and lost his ISO and other IT job duties.  See Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss And In The Alternative For Summary Judgment (Doc. #10) filed December 7, 2020 at 23; Complaint And Demand For Jury Trial (Doc. #1) at 4–5.

Defendant argues that none of these instances were materially adverse "employment actions" that would dissuade a reasonable person from filing a charge of discrimination. Memorandum In Support Of Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment (Doc. #7) filed November 9, 2020 at 14.[7]  But the Title VII anti-retaliation provision more broadly protects employees from a "retaliatory act" or acts that collectively might dissuade a reasonable worker from making or supporting a charge of discrimination.  See Burlington, 548 U.S. at 68–69.  Here, shortly after plaintiff participated in the Sandridge investigation and told McGhee that her harassment of Sandridge would cause liability for the agency, McGhee removed plaintiff from his ISO responsibilities including IT security investigations.  McGhee did so even though plaintiff was the only branch employee qualified to conduct such investigations.  Viewing the evidence in the light most favorable to plaintiff, he has presented a genuine issue of material fact whether the above actions collectively would dissuade

---

[7] Defendant also argues that plaintiff has not alleged sufficient facts to establish a "retaliatory hostile work environment claim," i.e. a workplace permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter his working conditions and create an abusive working environment. Memorandum In Support Of Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment (Doc. #7) at 15.  Plaintiff has not asserted an independent claim of retaliation based on bullying and denigration by McGhee. See Complaint And Demand For Jury Trial (Doc. #1) filed July 31, 2020 at 5–6.  Instead, he asserts that McGhee's actions collectively dissuaded him—and would dissuade a reasonable employee—from making or supporting a charge of discrimination.  Because plaintiff has not asserted a separate retaliatory "hostile work environment" claim, defendant's motion on this ground is moot.

a reasonable person from filing or assisting in complaints about discrimination.  See Burlington, 548 U.S. at 70–71 (reassignment can constitute materially adverse action even where former and new duties fall within same job description; EEOC recognizes that retaliatory work assignments are classic and widely recognized example of unlawful retaliation).  The Court overrules defendant's motion for summary judgment on this ground.[8]

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment (Doc. #6) filed November 9, 2020 is **OVERRULED**.

Dated this 24th day of August, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[8]  As to individual incidents, defendant argues that McGhee denied plaintiff training because of funding concerns and that McGhee based plaintiff's performance rating on his performance from January through October of 2018.  Memorandum In Support Of Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment (Doc. #7) at 14.  At this stage, and because defendant only seeks summary judgment on the first two elements of plaintiff's prima facie case, the Court need not evaluate whether defendant has asserted legitimate, non-retaliatory reasons for the various actions or the merit of any such reasons.